STACEY M. LEYTON – SBN 203827
MATTHEW J. MURRAY – SBN 271461
EMANUEL WADDELL – SBN 350156
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
sleyton@altber.com
mmurray@altber.com
ewaddell@altber.com
Attorneys for DEFENDANT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Isaac Newman,<br><br>        Plaintiff,<br><br>   vs.<br><br>Elk Grove Education Association,<br><br>        Defendant. | CASE NO. 2:24-cv-01487-WBS-SCR<br><br>**DEFENDANT ELK GROVE EDUCATION ASSOCIATION'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:  October 15, 2024<br>Hearing Time:  1:30 PM<br>Location:       Courtroom 5, 14th floor<br>Judge:         Hon. William B. Shubb |

## CORPORATE DISCLOSURE STATEMENT

Defendant Elk Grove Education Association ("EGEA") is a chartered chapter of the California Teachers Association ("CTA") and an affiliated local association of the National Education Association ("NEA").  EGEA has no parent corporation, and no company owns any stock in Defendant.

DEFENDANT'S MOTION TO DISMISS & MPA ISO MOTION

**NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on October 15, 2024 at 1:30 p.m., or as soon thereafter as this matter may be heard before the Honorable William B. Shubb in Courtroom 5 (14th floor) of the above-entitled Court located at 501 I Street, Sacramento, California 95814, Defendant Elk Grove Education Association ("EGEA") will move and does hereby move the Court for an order dismissing Plaintiff Isaac Newman's claims for injunctive and declaratory relief against EGEA under Fed. R. Civ. P. 12(b)(1) on the grounds that those claims are moot, and dismissing Plaintiff's claim for punitive damages against EGEA under Rule 12(b)(6) for failure to state a claim.

This Motion is based on this Notice of Motion and Motion, the accompanying supporting Memorandum of Points and Authorities, the accompanying Declaration of James Sutter, the record in this action, and such other matters as the Court may properly consider.

Dated:  August 26, 2024                    Respectfully submitted,

ALTSHULER BERZON LLP
Stacey M. Leyton
Matthew J. Murray
Emanuel Waddell

By: */s/ Emanuel Waddell*
*Attorneys for Defendant*

DEFENDANT'S MOTION TO DISMISS & MPA ISO MOTION

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

## TABLE OF CONTENTS

Corporate Disclosure Statement ........................................................................................ ii

Notice of Motion and Motion ........................................................................................... v

Memorandum of Points and Authorities............................................................................ iv

Table of Authorities ........................................................................................................... v

Introduction....................................................................................................................... 1

Background ........................................................................................................................ 3

Legal Standard .................................................................................................................. 7

Argument ........................................................................................................................... 8

I.  Plaintiff's Claims for Injunctive and Declaratory Relief Should be Dismissed as Moot Under Rule 12(b)(1) ............................................................................................... 8

   A.  There is no live controversy about current or future EGEA board positions ................ 9

   B.  The voluntary cessation exception to mootness does not apply to EGEA's comprehensive and unequivocal policy change............................................................ 12

II.  Plaintiff's Claim for Punitive Damages Should be Dismissed Under Rule 12(b)(6) Because He Has Failed to Plead Any Facts Sufficient to Show Malice, Reckless Indifference, or Oppression ...................................................................................... 15

Conclusion ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Akina v. Hawaii,*
    835 F.3d 1003 (9th Cir. 2016) ............................................................................... 11

*Already, LLC v. Nike, Inc.,*
    568 U.S. 85 (2013) ................................................................................................... 8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................... 8, 15, 16

*Barnes v. Healy,*
    980 F.2d 572 (9th Cir. 1992) ................................................................................. 12

*Bayer v. Neiman Marcus Group, Inc.,*
    861 F.3d 853 (9th Cir. 2017) .............................................................................. 9, 11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 8, 15, 16

*Board of Trustees of Glazing Health & Welfare Trust v. Chambers,*
    941 F.3d 1195 (9th Cir. 2019) (en banc) ................................................................. 9

*Brown v. Buhman,*
    822 F.3d 1151 (10th Cir. 2016) ............................................................................... 9

*Carey v. Inslee,*
    364 F.Supp.3d 1220 (W.D. Wash. 2019) ........................................................... 9, 13

*Cook v. Brown,*
    364 F.Supp.3d 1184 (D. Or. 2019), *aff'd,* 845 Fed. Appx. 671 (9th Cir. 2021) ..................... 11

*County of Los Angeles v. Davis,*
    440 U.S. 625 (1979) ................................................................................................. 9

*Danielson v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 28, AFL-CIO,*
    340 F.Supp.3d 1083, (W.D. Wash. 2018) ............................................................. 13

*Davis v. FEC,*
    554 U.S. 724 (2008) ........................................................................................... 8, 14

*Doe 1 v. United Airlines, Inc.,*
    2021 WL 4595766 (C.D. Cal. Apr. 22, 2021) ..................................................... 8, 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167, (2000) ......................................................................................... 13, 15

*Flanigan's Enters., Inc. v. City of Sandy Springs*,
   868 F.3d 1248 (11th Cir. 2017) (en banc) ...........................................................9

*Gabriele v. Serv. Employees Intl. Union, Loc. 1000*,
   466 F.Supp.3d 1095 (E.D. Cal. 2020), *aff'd,* 2021 WL 4959427 (9th Cir. Oct. 26,
   2021) .............................................................................................................10

*Gator.com Corp. v. L.L. Bean, Inc.*,
   398 F.3d 1125 (9th Cir. 2005) (en banc) ..........................................................9

*Hamidi v. Serv. Emps. Int'l Union Loc. 1000*,
   386 F.Supp.3d 1289 (E.D. Cal. 2019)..............................................................12

*Ind v. Colo. Dep't of Corr.*,
   801 F.3d 1209 (10th Cir. 2015) .........................................................................9

*Indep. Living Resources v. Oregon Arena Corp.*,
   982 F.Supp. 698 (D. Or. 1997) .......................................................................15

*Kant v. Serv. Emps. Int'l Union, Loc. 721*,
   2022 WL 5239532 (C.D. Cal. Sept. 1, 2022), *aff'd,* 2023 WL 6970156 (9th Cir.
   Oct. 23, 2023) ...........................................................................................10, 13

*Kelley v. Corrections Corp. of Am.*,
   750 F.Supp.2d 1132 (E.D. Cal. 2010)............................................................8, 15

*Kolstad v. Am. Dental Ass'n*,
   527 U.S. 526 (1999) .......................................................................................16

*McCarthy v. U.S.*,
   850 F.2d 558 (9th Cir. 1988) .............................................................................7

*MCI Commun. Services, Inc. v. Sec. Paving Co., Inc.*,
   2016 WL 1436521 (E.D. Cal. Apr. 12, 2016)...................................................16

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118, (2007) .......................................................................................11

*Nickles v. U.S.*,
   699 F.Supp.3d 898 (E.D. Cal. 2023).................................................................7

*In re NVIDIA Corp. Securities Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ...........................................................................8

*Powell v. McCormack*,
   395 U.S. 486 (1969) .........................................................................................9

*Rees v. PNC Bank, N.A.*,
   308 F.R.D. 266, (N.D. Cal. 2015) ...................................................................15

DEFENDANT'S MOTION TO DISMISS & MPA ISO MOTION

*Rivin v. Patrick K. Willis Co., Inc.*,
  2020 WL 8365251 (C.D. Cal. Dec. 4, 2020) ................................................8, 15

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) ......................................................... *passim*

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ...............................................................7

*Smith v. Univ. of Washington, Law Sch.*,
  233 F.3d 1188 (9th Cir. 2000) .................................................9, 11, 14

*Somerville v. Medtronic, Inc.*,
  2021 WL 5926029 (C.D. Cal. Aug. 19, 2021)...........................................15

*Timbisha Shoshone Tribe v. Dep't of Interior*,
  824 F.3d 807 (9th Cir. 2016) ...............................................................9

*Tosco Corp. v. Communities for a Better En't*,
  236 F.3d 495 (9th Cir. 2001) ...............................................................7

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ...............................................................17

*U.S. v. State of Wash.*,
  759 F.2d 1353 (9th Cir. 1985) .............................................................11

*Warnshuis v. Bausch Health U.S., LLC*,
  2020 WL 3294808 (E.D. Cal. June 18, 2020) ...........................................16

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ...............................................7, 12, 14

*Yohn v. California Teachers Assn.*,
  2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) ...............................12, 13

**Federal Statutes**

42 U.S.C. § 1981a ...................................................................................6, 16

Fed. R. Civ. P. 10 ...................................................................................17

Fed. R. Civ. P. 12 ......................................................................... *passim*

**California Statutes**

Cal. Civ. Proc. Code § 3294 ......................................................................16

Cal. Gov't Code § 12940 ................................................................. *passim*

**INTRODUCTION**

The injunctive and declaratory relief claims asserted in this lawsuit are now moot, because the position that is the subject of the Complaint no longer exists and the defendant Elk Grove Education Association ("EGEA" or "the Association") no longer has any position with any eligibility criteria that is based on race.

Plaintiff Isaac Newman seeks injunctive and declaratory relief against EGEA, the union that represents teachers and other professionals in the Elk Grove Unified School District, ordering EGEA to revise its bylaws to "remove all race-based eligibility criteria" for the recently created BIPOC At-Large Director position on the union's Executive Board. ECF 1 ("Compl.") at 17. EGEA, however, has already done so. EGEA has eliminated the BIPOC At-Large Director position and replaced it with a Racial Equity At-Large Director position that expressly is "open to all Active members," regardless of race. Declaration of James Sutter ("Sutter Decl.") ¶¶ 20–21, Exs. B, C. An election for the new Racial Equity position is underway and will conclude in September. The candidate nomination period is currently open, and Plaintiff is free to run for the office if he so desires. EGEA does not now limit eligibility for any of its elected offices based on race, and there is no reasonable expectation that it will impose any such limitations in the future. There is thus no longer any live controversy for the Court to adjudicate regarding Plaintiff's claims for injunctive and declaratory relief, so those claims must be dismissed as moot.

Plaintiff's Complaint also seeks punitive damages for EGEA's creation of the former BIPOC At-Large position on its Executive Board, but that claim should be dismissed as well. The standard for awarding punitive damages under both Title VII and California's Fair Employment and Housing Act ("FEHA") is high and requires a plaintiff to prove intentional, malicious, and egregious conduct that willfully disregards the law or is designed to cause harm to another person. Plaintiff alleges no facts meeting that standard, and the materials he incorporates by reference in his Complaint demonstrate precisely the opposite.[1]

---

[1] Plaintiff's claims for compensatory and nominal damages are not subject to this motion.

DEFENDANT'S MOTION TO DISMISS & MPA ISO MOTION

1       In 2023, EGEA determined that it was doing an inadequate job of providing representation

2   to its members who identified as racial minorities.  As reflected in the EGEA Bylaws attached to

3   Plaintiff's Complaint, one of EGEA's express purposes is to provide representation to members of

4   all races.  Compl. Ex. C (ECF 1-4) at 2.  Yet, while 29% of certificated employees in the school

5   district identified as Black, Indigenous, or People of Color ("BIPOC"), only 10% of EGEA's

6   Executive Board identified as BIPOC.  Compl. Ex. D (ECF 1-5) at 3.  To address that

7   underrepresentation and better serve the Association's members of all racial backgrounds, less than

8   a year ago EGEA created a new position—the BIPOC At-Large Director.

9       The BIPOC At-Large Director was a full member of EGEA's Executive Board with all

10  attendant rights and responsibilities, but with an added focus on issues of racial diversity, equity,

11  and inclusion.  To address its own history of underrepresentation, the Board determined that the

12  position should be held by a person who self-identified as a racial minority.  The proposal had broad

13  support from the EGEA membership and was adopted by the EGEA Representative Council, the

14  Association's policy-making body.  The position was created, and EGEA members elected an

15  individual to hold the position in a special election at the end of December 2023.

16      Plaintiff Isaac Newman is an EGEA member who had expressed frustration about EGEA's

17  other efforts to become a more diverse, equitable, and inclusive union.  To EGEA's knowledge, he

18  had never before sought to hold elected office in EGEA.  After the election, in May 2024, Plaintiff

19  filed this lawsuit, accusing EGEA of intentional race discrimination under state and federal law.

20      EGEA's intent has always been to be more, not less, inclusive, and to combat discrimination

21  and its results.  Accordingly, it responded swiftly to the filing of the lawsuit.  Over the summer,

22  when school was not in session and the Association typically did not hold regular meetings, EGEA

23  drafted amended bylaws to eliminate the BIPOC At-Large position and replace it with a new Racial

24  Equity Director At-Large position, and to abolish the accompanying restrictive race-conscious

25  eligibility criteria in its bylaws.  Before the first regular meeting of the new school year, EGEA

26  convened a special meeting of the Representative Council, at which the Representative Council

27  reviewed and discussed the proposed amendment.  EGEA then formally adopted the bylaws

28

DEFENDANT'S MOTION TO DISMISS & MPA ISO MOTION

1    amendment on August 20, 2024, at its first regular meeting of the new school year, and immediately

2    began conducting an election for the new position that is open to all EGEA members, including

3    Plaintiff.  The Executive Board also adopted a standing rule that prohibits the Board from proposing

4    the creation of another position that restricts eligibility based on race.  EGEA's rapid and

5    comprehensive response to Plaintiff's lawsuit reflects its desire to avoid any inaccurate implication

6    that it intended to discriminate against any of its members, and is in keeping with the Executive

7    Board's overall goal of improving its diversity, equity, and inclusion of all EGEA members.

8          Plaintiff's claims for injunctive and declaratory relief should thus be dismissed as moot

9    because the position he challenges no longer exists, and his claim for punitive damages should be

10   dismissed for failure to state a claim because Plaintiff has not alleged any facts demonstrating that

11   EGEA acted maliciously or with some intent to cause him harm—and the documents incorporated

12   into the Complaint establish the absence of any such malice or intent.

13                              **BACKGROUND**

14         EGEA is a public employee union that represents teachers and other employees of the Elk

15   Grove Unified School District.  Compl. ¶ 2.  It is a chartered chapter of the California Teachers

16   Association ("CTA") and affiliated with the National Education Association ("NEA").  Compl.

17   ¶ 19, Ex. C (ECF 1-4) at 2 (EGEA Bylaws).  EGEA is the exclusive bargaining representative for

18   teachers employed by the school district.  It fulfills its responsibilities in several ways, including by

19   representing members in relations with their employer, promoting cooperation and communication

20   among the membership, and providing a means of representation for its ethnic-minority members.

21   Compl. ¶ 12, Ex. C at 2.

22         EGEA's bylaws establish its structure and purpose and the rights and obligations of its

23   members.  *See* Compl. Ex. C.  The bylaws establish two EGEA governing bodies: the

24   Representative Council and the Executive Board.  *Id.*; Compl. ¶ 16, Ex. C at 3, 7.  Both bodies are

25   elected by the general EGEA membership.  *Id.*  The Representative Council is EGEA's policy-

26   making body vested with the Association's power and decision-making authority, and its

27   responsibilities include establishing the policies and objectives of EGEA, setting members' dues,

28

1  and approving the establishment of committees.  Compl. Ex. C at 4.  Representatives on the Council

2  are elected by and from the active membership of individual faculty groups, and the Council is

3  structured to ensure that every active member has a designated representative.  *Id.*  The

4  Representative Council also has the power to amend the EGEA bylaws via a two-thirds majority

5  vote, after providing notice to all active members.  Compl. Ex. C at 10.

6        The Executive Board is a smaller body made up of the three elected Officers of EGEA—the

7  President, Vice-President, and Secretary-Treasurer—and eleven At-Large Directors elected by the

8  entire active membership.  Compl. Ex. C at 7.  The Executive Board's duties and responsibilities

9  include exercising the business and organizational powers and duties of EGEA, coordinating

10  EGEA's activities, and directing EGEA's bargaining and grievance activities.  *Id.* at 8.  The At-

11  Large Directors also have specific constituencies whose interests they are responsible for

12  representing.  The positions currently include one Pre-K, TK, or K At-Large Director; one Primary

13  At-Large Director; one Intermediate At-Large Director; one Middle School At-Large Director; one

14  High School At-Large Director; one Special Education At-Large Director; one Member-at-Large

15  Director; and one Racial Equity At-Large Director.  *Id.*; Sutter Decl. Ex. C.  At-Large Directors are

16  elected to two-year terms.  *Id.*  Every member of the Executive Board is also a member of the

17  Representative Council.  *Id.*

18        On March 21, 2023, the Executive Board proposed the creation of the BIPOC At-Large

19  Director position to the Representative Council.  Compl. ¶ 22, Ex. D; Sutter Decl. ¶ 4.  The

20  Executive Board explained that it desired "to fulfill what is currently in [EGEA's] bylaws," which

21  recognized EGEA's responsibility to "provide a means of representation for its ethnic-minority

22  members."  Compl. Ex. D at 2.  The Executive Board explained that while 29% of certificated

23  employees in the school district, 25% of EGEA staff, and 21% of EGEA members identified as

24  BIPOC, only 10% of Executive Board members identified as BIPOC.  Compl. Ex. D at 3; Sutter

25  Decl. ¶ 5.  The Board determined that this underrepresentation was troubling, given EGEA's

26  purposes and its commitment to ensuring the representation of all members.  Compl. Ex. D; Sutter

27  Decl. ¶¶ 6–7.

28

1    Based on these express considerations, the Executive Board proposed that the new position

2    be created with a specific focus on supporting affinity groups, participating on the equity

3    committee, promoting the EGEA's efforts to bolster diversity, equity, and inclusion, and supporting

4    the school district's efforts to recruit and retain racial minority educators.  Compl. Ex. D at 2; Sutter

5    Decl. ¶¶ 6, 10.  While the Executive Board proposed that the BIPOC At-Large Director "self-

6    identif[y] as a member of one or more of" the identified BIPOC categories, it specified that the

7    Director's "primary responsibility" would be "to address the racial equity needs of *all* EGEA

8    members."  Compl. Ex. D at 2 (emphasis added); *see* Sutter Decl. ¶ 10–11.  The position, like all

9    other At-Large Directors, would be filled through open nominations followed by a secret ballot vote

10   of all active EGEA members.  Compl. Ex. C at 10, Ex. D.

11   According to Plaintiff's Complaint, the Representative Council voted to amend the EGEA

12   bylaws and create the new BIPOC At-Large director position on April 4, 2023.  Compl. ¶¶ 25–26.

13   The first reading of the amended bylaws took place on October 3, 2023, and the second reading

14   occurred on November 7, 2023, at which point the amendments took effect.  Compl. ¶¶ 28, 30.

15   CTA also approved the amended bylaws.  Compl. ¶ 29.

16   An election to fill the newly created position took place between December 13 and 22, 2023.

17   Compl. ¶ 37.  As set forth in Plaintiff's Complaint, Plaintiff was opposed to the creation of the

18   position and EGEA's efforts to become more diverse, equitable, and inclusive, and sought to push

19   back against those efforts.  Compl. ¶¶ 38–40, 45.  He alleges that he "sought to run" for the

20   position, apparently to undermine its stated intention to promote both the Association's and school

21   district's diversity, equity, and inclusion efforts.  Compl. ¶ 40.  However, Plaintiff alleges, he

22   ultimately decided not to submit his name as a candidate because the candidacy form required him

23   to certify that he self-identified as a member of one or more of the BIPOC categories, and he was

24   unwilling to do so.  Compl. ¶ 43.  The election took place with only one candidate, Gia Moreno

25   Cruz, who was elected to the position.  Sutter Decl., ¶ 14.

26   Plaintiff filed a charge with the EEOC and obtained a right-to-sue notice on April 23, 2024.

27   Compl. ¶14, Ex. B (ECF 1-3).   He then filed his federal complaint on May 24, 2024.  ECF 1.  The

28

1  Complaint pleads two counts, one alleging a violation of Title VII of the Civil Rights Act of 1964,

2  42 U.S.C. § 2000e-2(c) ("Title VII"), and one alleging a violation of the California Fair

3  Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(b).  Compl. ¶¶ 69–87.  Plaintiff

4  seeks an injunction ordering EGEA to remove all race-based eligibility criteria for the BIPOC At-

5  Large position or eliminate the position altogether, an injunction prohibiting EGEA from creating

6  any future elected offices with race-based eligibility criteria, and a declaration that the BIPOC At-

7  Large position is unlawful and constitutes ongoing race discrimination.  Compl. Prayer for Relief,

8  A–C.  He also seeks compensatory, nominal, and punitive damages, and attorneys' fees and costs.

9  Compl. Prayer for Relief, D–F.

10      EGEA leadership first learned of Plaintiff's lawsuit when it was asked for comment on the

11  lawsuit by reporters, several days before EGEA was served with the Complaint on June 6, 2024.

12  Sutter Decl. ¶¶ 15, 18.  Plaintiff did not inform the EGEA Executive Board or Representative

13  Council of his alleged desire to run for the BIPOC At-Large position but for the eligibility criteria

14  before filing this lawsuit, and to EGEA's knowledge, Plaintiff had never before expressed an

15  interest in holding any EGEA elected position.  Sutter Decl. ¶¶ 15–16.

16      EGEA promptly responded to Plaintiff's concerns.  In late May, before even being served

17  with the Complaint, the Executive Board began discussing amending the EGEA bylaws to eliminate

18  the BIPOC At-Large position and replace it with a Racial Equity At-Large Director open to all

19  active members.  Sutter Decl. ¶ 17.  The Board acted to make it unequivocally clear that the goals

20  and responsibilities of the new position are to promote and address the "racial equity needs of *all*

21  EGEA members" and the position is "open to *all* Active members," regardless of race.  Sutter Decl.

22  ¶ 17, Exs. B, C (emphases added).  EGEA called its Representative Council for a special meeting to

23  ensure that the proposed amendment was adopted as soon as possible after the beginning of the new

24  school year.  Sutter Decl. ¶ 19.  The Executive Board proposed the new amendment to the

25  Representative Council on August 6, 2024, and the second reading and official adoption took place

26  at the Representative Council's meeting on August 20, 2024.  Sutter Decl. ¶¶ 20–21.  The former

27  BIPOC At-Large director position no longer exists.  Sutter Decl. ¶ 22.

28

1    On August 20, 2024, the Executive Board also adopted a new standing rule prohibiting it

2    from "propos[ing] or endors[ing] the creation of any EGEA position that requires members to have

3    a certain racial or ethnic background to be eligible, or that excludes any member from being eligible

4    on the basis of race or ethnicity."  Sutter Decl. ¶ 27, Ex. F.

5    EGEA informed all active members of the revised bylaws and the new standing rule on

6    August 21, 2024.  Sutter Decl. ¶ 23, Ex. D.  On the same day, the Elections Committee opened the

7    nomination form for the new Racial Equity At-Large director position.  *Id.*  The form makes clear

8    that all active members are eligible to run for the position, irrespective of race.  Sutter Decl. Ex. E.

9    The nominations period is open until September 3, 2024.  Sutter Decl. ¶ 25.  The election is

10   scheduled to take place from September 17 through September 26, 2024.  Sutter Decl. ¶ 26.  EGEA

11   has notified all active members, including Plaintiff, that they are eligible to run for the new Racial

12   Equity At-Large position.  Sutter Decl. ¶ 23.

13                                   **LEGAL STANDARD**

14   EGEA moves to dismiss Plaintiff's claims for injunctive and declaratory relief as moot

15   under Federal Rule of Civil Procedure 12(b)(1).  "When subject matter jurisdiction is challenged

16   under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in

17   order to survive the motion."  *Nickles v. U.S.*, 699 F.Supp.3d 898, 908 (E.D. Cal. 2023) (quoting

18   *Tosco Corp. v. Communities for a Better En't*, 236 F.3d 495, 499 (9th Cir. 2001)).  In evaluating

19   EGEA's motion to dismiss under Rule 12(b)(1), this Court "is not restricted to the face of the

20   pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

21   disputes concerning the existence of jurisdiction."  *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir.

22   1988).  "It also need not presume the truthfulness of the plaintiffs' allegations."  *White v. Lee*, 227

23   F.3d 1214, 1242 (9th Cir. 2000).  "Once the moving party has converted the motion to dismiss into

24   a factual motion by presenting affidavits or other evidence properly brought before the court," as

25   EGEA has done here, "the party opposing the motion must furnish affidavits or other evidence

26   necessary to satisfy its burden of establishing subject matter jurisdiction."  *Safe Air for Everyone v.*

27   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

28

1   EGEA separately moves to dismiss Plaintiff's claim for punitive damages under Rule

2   12(b)(6).  "To withstand a motion to dismiss [a claim for punitive damages] pursuant to Rule

3   12(b)(6), a complaint must set forth factual allegations sufficient 'to raise a right to relief above the

4   speculative level.'"  *Kelley v. Corrections Corp. of Am.*, 750 F.Supp.2d 1132, 1137 (E.D. Cal. 2010)

5   (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The complaint "need not

6   contain detailed factual allegations," but "must provide more than 'labels and conclusions' or 'a

7   formulaic recitation of the elements of a cause of action.'"  *Doe 1 v. United Airlines, Inc.*, 2021 WL

8   4595766, at *2 (C.D. Cal. Apr. 22, 2021) (quoting *Twombly*, 550 U.S. at 555).  If the complaint

9   does not "contain sufficient factual matter, accepted as true, to state a claim [for punitive damages]

10  that is plausible on its face," that claim must be dismissed.  *Rivin v. Patrick K. Willis Co., Inc.*, 2020

11  WL 8365251, at *1 (C.D. Cal. Dec. 4, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

12  When evaluating a 12(b)(6) motion, a court may consider the complaint itself, and "its attached

13  exhibits, documents incorporated by reference, and matters properly subject to judicial notice."  *In*

14  *re NVIDIA Corp. Securities Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

15                                    **ARGUMENT**

16  **I.     Plaintiff's Claims for Injunctive and Declaratory Relief Should Be Dismissed as Moot**

17         **Under Rule 12(b)(1).**

18      A plaintiff must establish Article III jurisdiction for each form of relief he seeks.  *Davis v.*

19  *FEC*, 554 U.S. 724, 734 (2008).  The Court lacks jurisdiction over a claim for relief if the request

20  does not present an active, live controversy.  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

21  Plaintiff's claims against EGEA for injunctive and declaratory relief are moot because the BIPOC

22  At-Large position he challenges no longer exists, EGEA has already amended its bylaws to

23  eliminate any racial restriction on eligibility for any position, and EGEA is running an election to

24  fill a new Racial Equity At-Large position that is open to all active EGEA members, including

25  Plaintiff, regardless of racial or ethnic background.  The Executive Board has also adopted a

26  standing rule that prohibits it from restricting eligibility for any EGEA elected positions based on

27  race in the future.  As such, "there is no reasonable expectation that the [alleged] violation will

28

1   recur," and EGEA has "completely and irrevocably eradicated the effects of the alleged violation,"

2   rendering Plaintiff's claims for injunctive and declaratory relief moot.  *County of Los Angeles v.*

3   *Davis,* 440 U.S. 625, 631 (1979) (citations omitted).

4       **A.    There is no live controversy about current or future EGEA board positions.**

5       For a federal court to have subject matter jurisdiction over a claim, Article III of the

6   Constitution requires an actual, live controversy between the parties at each stage of the

7   proceedings.  *Timbisha Shoshone Tribe v. Dep't of Interior,* 824 F.3d 807, 812 (9th Cir.

8   2016); *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005) (en banc).  For

9   that reason, "even a once-justiciable [claim] becomes moot and must be dismissed 'when the issues

10  presented are no longer "live."'"  *Flanigan's Enters., Inc. v. City of Sandy Springs*, 868 F.3d 1248,

11  1255 (11th Cir. 2017) (en banc) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

12      A party can demonstrate that claims for injunctive and declaratory relief are moot by

13  showing that "there is no reasonable expectation that the alleged violation will recur," and that

14  "interim relief or events have completely and irrevocably eradicated the effects of the alleged

15  violation."  *Carey v. Inslee*, 364 F.Supp.3d 1220, 1225 (W.D. Wash. 2019) (internal quotation

16  marks and ellipsis omitted; quoting *Smith v. Univ. of Washington, Law Sch.*, 233 F.3d 1188, 1194

17  (9th Cir. 2000), *overruled on other grounds by Board of Trustees of Glazing Health & Welfare*

18  *Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc)); *see Bayer v. Neiman Marcus*

19  *Group, Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (a claim for injunctive relief becomes moot when

20  there is no longer "some present harm left to enjoin" because it is "clear the conduct alleged as the

21  basis for the requested relief could not reasonably be expected to recur.") (internal quotation marks

22  and citations omitted).  "Put another way, a [claim] becomes moot when a plaintiff no longer suffers

23  actual injury that can be redressed by a favorable judicial decision."  *Brown v. Buhman*, 822 F.3d

24  1151, 1166 (10th Cir. 2016) (quoting *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir.

25  2015)) (quotations omitted).  These principles apply with equal force in a declaratory judgment

26  action.  *See, e.g., Gator.com*, 398 F.3d at 1129 (Article III case or controversy requirement is "not

27  relaxed in the declaratory judgment context"; accordingly, a declaratory judgment claim is moot if

28

1  "changes in the circumstances that prevailed at the beginning of litigation have forestalled any

2  occasion for meaningful relief") (citations and quotations omitted).

3         Here, there is no longer an "actual, live controversy" sufficient to establish this Court's

4  jurisdiction over Plaintiff's claims for injunctive and declaratory relief.  Plaintiff seeks an injunction

5  ordering EGEA "to amend its bylaws to either remove all race-based eligibility criteria for the

6  BIPOC Position or eliminate the position altogether."  Compl. Prayer B.  EGEA has already done

7  both.  On August 20, 2024, EGEA amended the EGEA bylaws to eliminate the former BIPOC At-

8  Large Director position and replaced that position with a new Racial Equity At-Large Director

9  position that has no "race-based eligibility criteria."  *Id.*; *see* Sutter Decl. Exs. B, C.  When EGEA

10 adopted the amendment eliminating the BIPOC At-Large Director position, that former position

11 was dissolved and the person who had been elected to fill that position ceased being a member of

12 the Executive Board.  Sutter Decl. ¶ 22.  EGEA is now holding an election to fill the new Racial

13 Equity Director position, and all active members—including Plaintiff—are eligible to run under

14 EGEA's now-current bylaws.  *See supra* pp. 10–11.  Those bylaws explicitly acknowledge that all

15 members, including those who do not self-identify as a racial minority, "may have qualifications

16 and interests that render them qualified to serve" in the position.  *Id*.  Plaintiff thus has already

17 obtained the injunctive relief he seeks regarding the former BIPOC At-Large position.

18         Plaintiff also seeks an injunction "prohibiting EGEA from creating any future elected offices

19 limited to persons of particular racial groups."  Compl. Prayer C.  But there is no reasonable

20 expectation that EGEA will do so.  *See, e.g.*, *Kant v. Serv. Emps. Int'l Union, Loc. 721*, 2022 WL

21 5239532, at *5 (C.D. Cal. Sept. 1, 2022) (claims challenging union dues deductions were moot

22 because "there is no reasonable expectation that plaintiffs will be subjected to [unauthorized

23 deductions] in the future because they have resigned from the Union, and the dues deductions have

24 ceased"), *aff'd*, 2023 WL 6970156, at *1 (9th Cir. Oct. 23, 2023); *Gabriele v. Serv. Employees Intl.*

25 *Union, Loc. 1000*, 466 F.Supp.3d 1095, 1098 (E.D. Cal. 2020), *aff'd,* 2021 WL 4959427 (9th Cir.

26 Oct. 26, 2021) (same).  EGEA has firmly committed not to limit eligibility for any position to

27 persons of particular racial groups in the future, Sutter Decl. ¶ 27–29, and the Executive Board has

28

1   prohibited the proposal or creation of such positions.  *Id.* at ¶ 27, Ex. F.  The short history of the

2   BIPOC At-Large position and EGEA's prompt response to this litigation by eliminating that

3   position demonstrate that there is no reasonable expectation that EGEA will amend its bylaws to

4   create such a position again.  *See infra* pp. 16–19.  Accordingly, any injunctive relief this Court

5   could order would be ineffective, because everything Plaintiff wants has already happened.

6        Plaintiff's request for declaratory relief is also moot, for all the same reasons.  "[T]he test for

7   mootness applied to a claim for declaratory relief 'is whether the facts alleged, under all the

8   circumstances, show that there is a substantial controversy, between parties having adverse legal

9   interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"

10  *Bayer*, 861 F.3d at 867 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

11  Therefore, if there is "no controversy, let alone an immediate one," due to the discontinuation of an

12  allegedly unlawful policy, a declaratory judgment would be "an impermissible advisory opinion."

13  *Cook v. Brown*, 364 F.Supp.3d 1184, 1190 (D. Or. 2019), *aff'd*, 845 Fed. Appx. 671 (9th Cir. 2021).

14       Plaintiff asks this Court to declare "that the continued existence of the BIPOC Position

15  constitutes ongoing, unlawful racial discrimination."  Compl., Prayer A.  But because the BIPOC

16  At-Large position has been abolished and will not be recreated, the declaration that Plaintiff asks for

17  will have no effect on his legal status or rights.  *See U.S. v. State of Wash.*, 759 F.2d 1353, 1357 (9th

18  Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in

19  clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief

20  from the uncertainty and controversy faced by the parties.").  Plaintiff also asks this Court to

21  "[d]eclare that EGEA's creation of the BIPOC Position violated Title VII and FEHA's prohibitions

22  against racial discrimination by labor organizations."  Compl., Prayer A.  But "a declaratory

23  judgment merely adjudicating past violations of federal law—as opposed to continuing or future

24  violations of federal law—is not an appropriate exercise of federal jurisdiction."  *Bayer*, 861 F.3d at

25  868.  Plaintiff's requested declaratory relief would "amount to an impermissible advisory opinion,"

26  because there is no longer any such position that could be violating state or federal law.  *Akina v.*

27  *Hawaii*, 835 F.3d 1003, 1010–11 (9th Cir. 2016); *see Smith*, 233 F.3d at 1195 (when law school

28

changed admissions policy to stop considering race "there [was] no more reason to maintain a prospective declaratory relief class action to pass on the now abandoned policy that there [was] to issue an injunction against that policy").

In short, by promptly and clearly amending its bylaws to eliminate the BIPOC At-Large position and remove any race-based eligibility criteria for any elective offices, and by making clear that it will not impose any such criteria in the future, EGEA has ensured that Plaintiff's requests for injunctive and declaratory relief no longer present a "live" case or controversy. *Rosebrock v. Mathis*, 745 F.3d 963, 971–72 (9th Cir. 2014). Plaintiff's requests for injunctive and declaratory relief thus should be dismissed as moot.

**B.    The voluntary cessation exception to mootness does not apply to EGEA's comprehensive and unequivocal policy change.**

Plaintiff might object that the "voluntary cessation" exception to the mootness doctrine applies to preserve his claims for injunctive and declaratory relief, but he would be mistaken. The voluntary cessation doctrine does not apply where, as here, "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992). The Ninth Circuit uses several factors to determine whether the voluntary cessation exception to mootness applies, and has held that a change in policy "is more likely" to render a claim moot if:

> (1) the policy change is evidenced by language that is 'broad in scope and unequivocal in tone'; (2) the policy change fully 'addresses all of the objectionable measures that the [Defendant] took against the plaintiff[] in the case'; (3) 'the case in question was the catalyst for the [Defendant's] adoption of the new policy'; (4) the policy has been in place for a long time when [the court] consider[s] mootness; and (5) 'since the policy's implementation the [Defendant's] officials have not engaged in conduct similar to that challenged by the plaintiff.

*Rosebrock*, 745 F.3d at 972 (quoting *White*, 227 F.3d at 1243–44 & nn. 25, 27) (internal citations and alterations omitted).[2] Ultimately, the relevant question is whether the party arguing that the

---

[2] Although *Rosebrock* involved changes to governmental policy, courts in this circuit have applied its analysis to cases involving policy changes by public sector unions. *See, e.g.*, *Hamidi v. Serv. Emps. Int'l Union Loc. 1000*, 386 F.Supp.3d 1289, 1296 (E.D. Cal. 2019); *Yohn v. California*

1   case is moot has "made it absolutely clear that the allegedly wrongful behavior could not reasonably

2   be expected to recur." *Rosebrock*, 745 F.3d at 971 (quoting *Friends of the Earth, Inc. v. Laidlaw*

3   *Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000)).

4         EGEA's comprehensive policy change satisfies any concerns about voluntary cessation.

5   The new bylaws, and EGEA's communications regarding them, are broad and unequivocal, and

6   fully address Plaintiff's objections to the previous position.  EGEA has eliminated the challenged

7   BIPOC At-Large position and amended its bylaws to create a new Racial Equity At-Large position

8   that expressly "is open to *all* EGEA members."  Sutter Decl. Exs. B, C (emphasis added).  In its

9   communications to the Representative Council explaining the proposed change, the EGEA

10   Executive Board unequivocally stated that "EGEA's intention is to remain within the law and not to

11   exclude *any* member in good standing from running for this position if they believe they can serve

12   in good faith."  Sutter Decl. Ex. A (emphasis added).  In his statement to the general membership

13   about the bylaws amendment and the new standing rule, the EGEA President further clarified that

14   "the Executive Board is committed to ensuring that EGEA positions will be open to *all* active

15   members, regardless of their racial or ethnic identity."  Sutter Decl. Ex. D (emphasis added).  That

16   standing rule was designed to prevent a similar situation from occurring in the future.  Sutter Decl.

17   Ex. F.  These statements and actions are plainly "clear statement[s], broad in scope, and

18   unequivocal in tone," and are far more comprehensive than the lone email that mooted the dispute

19   in *Rosebrock*.  745 F.3d at 973.

20         Further, while the policy change is recent, there is no indication that EGEA will renege on

21   its commitments and reinstate racial criteria for any elected board position, particularly since there

22   is no evidence that it ever adopted such criteria for any position before last year.  *See, e.g., Yohn*,

23   2018 WL 5264076, at *4 (holding that because defendants had followed the law for 40 years, there

24   was no reason to doubt they would abide by a change in law moving forward); *Kant*, 2022 WL

25   5239532, at *5, *aff'd*, 2023 WL 6970156, at *1 (9th Cir. Oct. 23, 2023) (rejecting voluntary

26

27   *Teachers Assn.*, 2018 WL 5264076, at *2–3 (C.D. Cal. Sept. 28, 2018); *Carey*, 364 F.Supp.3d at 1226 & n.3 (same; citing *Danielson v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 28, AFL-*

28   *CIO*, 340 F.Supp.3d 1083, 1084 (W.D. Wash. 2018)).

DEFENDANT'S MOTION TO DISMISS & MPA ISO MOTION

1    cessation argument).  And even if EGEA were to attempt to reinstitute race-based criteria for an

2    elected board position, such a change would need to be approved by CTA, which is now aware of

3    this issue and would therefore be unlikely to approve of any such amendment.  Sutter Decl. ¶ 30; *cf.*

4    *Smith*, 233 F.3d at 1193 (challenge to law school's racial admissions criteria moot after state

5    changed law to make such a policy illegal because it was "highly unlikely that the Law School's old

6    practices will be recrudescent under the current state of the law").

7           It is also clear that this lawsuit was a catalyst for the adoption of EGEA's new policy.  The

8    *Rosebrock* court explained that "mootness is more likely" when the case is question "was the

9    catalyst" for the adoption of a new policy.  745 F.3d at 972 (quoting *White,* 227 F.3d at 1243).  That

10   is what has happened here.  EGEA initially amended its bylaws to create the BIPOC At-Large

11   position under the assumption that the change was lawful, and it received approval to do so from its

12   Representative Council.  Sutter Decl. ¶ 7, 12.  When EGEA learned of Plaintiff's Complaint, EGEA

13   acted swiftly, and outside of its normal course of business, to remedy the objectionable language

14   and ensure that all active members are eligible to run for the newly created Racial Equity At-Large

15   position, without any racial eligibility criteria, like all other EGEA elected offices.

16          Finally, by dissolving the former BIPOC At-Large Director position and promptly running a

17   new election for the Racial Equity At-Large position, EGEA has ensured that all effects of the

18   alleged violation have been completely eradicated.  *Smith*, 233 F.3d at 1194.  Plaintiff alleged that

19   he wanted to run for the newly created BIPOC At-Large position to push back against EGEA's

20   diversity, equity, and inclusion efforts, but that he was unable to do so because he did not want to

21   falsely claim to be a member of a racial minority group.  Compl. ¶¶ 38–40, 43.  That barrier no

22   longer exists, and he is free to submit himself as a candidate for the new Racial Equity At-Large

23   position and make his case to the EGEA membership.  *See Davis*, 440 U.S at 633–34 (county

24   successfully mooted injunctive relief claim seeking to prevent racial discrimination by "completely

25   cur[ing] any discriminatory effects" of the challenged proposal).

26          In sum, the steps EGEA has taken have made it "absolutely clear that the allegedly wrongful

27   behavior could not reasonably be expected to recur."  *Rosebrock*, 745 F.3d at 971 (quoting *Friends*

28

*of the Earth*, 528 U.S. at 189).  EGEA has comprehensively and unequivocally eliminated the racial eligibility criteria that Plaintiff challenges and has fully remedied any ongoing effects of the prior existence of that position on Plaintiff.  EGEA has also formally committed itself to abide by the change going forward in order to stay true to its purposes and goals as an organization, to say nothing of avoiding "the high cost of litigation and of remedying alleged … violations" which "provide[] ample incentive … to ensure future compliance" with all applicable antidiscrimination laws.  *Indep. Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 774 (D. Or. 1997), *supplemented,* 1 F.Supp.2d 1159 (D. Or. 1998).  The voluntary cessation exception to mootness is not applicable to EGEA's actions.

## II.     Plaintiff's Claim for Punitive Damages Should be Dismissed Under Rule 12(b)(6) Because He Has Failed to Plead Any Facts Sufficient to Show Malice, Reckless Indifference, or Oppression.

Plaintiff's claim for punitive damages suffers from a different fatal flaw:  The facts alleged in his Complaint fail to state a claim for such relief.  The "Federal Rules of Civil Procedure provide the pleading standard for cases in federal courts," even when a plaintiff brings a state law cause of action.  *Rivin*, 2020 WL 8365251, at *3 (quoting *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015)).  A plaintiff seeking to recover punitive damages in federal court under either Title VII or FEHA must therefore satisfy the pleading standards set forth in *Twombly* and *Iqbal* to survive a 12(b)(6) motion to dismiss.  *Kelley v. Corrections Corp. of Am.*, 750 F.Supp.2d 1132, 1147 (E.D. Cal. 2010).

District courts in this Circuit have repeatedly explained that when the plaintiff's punitive damages claims "are unsupported by any allegation of any facts," they must be dismissed as insufficiently alleged.  *Id.* at 1148; *see, e.g.*, *Rivin*, 2020 WL 8365251, at *3 ("[T]he Court agrees that *Iqbal's* and *Twombly's* pleading requirements apply to claims for punitive damages."); *Somerville v. Medtronic, Inc.*, 2021 WL 5926029, at *13 (C.D. Cal. Aug. 19, 2021) ("These conclusory allegations are not enough to support a claim for punitive damages."); *Doe 1*, 2021 WL 4595766, at *6 ("The Court agrees that the pleading requirements set forth in *Twombly* and *Iqbal* apply to Plaintiffs' claim for punitive damages."); *Warnshuis v. Bausch Health U.S., LLC*, 2020 WL

3294808, at *12 (E.D. Cal. June 18, 2020) ("Because the Ninth Circuit has not definitively settled the issue, the Court will continue to follow the line of cases that permit Rule 12(b)(6) motions to challenge the factual sufficiency of a punitive damages request."); *MCI Commun. Services, Inc. v. Sec. Paving Co., Inc.*, 2016 WL 1436521, at *4 (E.D. Cal. Apr. 12, 2016) (same).

To recover punitive damages under Title VII of the Civil Rights Act, a plaintiff must "demonstrate[] that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The Supreme Court has explained that "[t]here will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard," such as those "in which the employer discriminates with the distinct belief that its discrimination is lawful." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536–37 (1999). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535.

The standard for recovering punitive damages under FEHA is similarly onerous. The California Civil Code "permits an award of punitive damages" only "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." *Doe 1*, 2021 WL 4595766, at *6; *see* Cal. Civ. Code § 3294(a). "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others," and "oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(1), (2).

Plaintiff has utterly failed to meet his burden of pleading facts sufficient to sustain a claim for punitive damages under either Title VII or FEHA. His Complaint does not make any factual allegation that EGEA acted with knowledge that its actions were unlawful, much less any factual allegations that could give rise to such an inference. Likewise, he does not allege any facts demonstrating that EGEA acted despicably or with an intention to cause injury. Instead, Plaintiff simply alleges that the Executive Board passed the bylaws amendment creating the BIPOC At-

1  Large position, that the amendment included restrictive eligibility criteria, and that he would have

2  applied for the position but could not because of the racial categorization section on the candidate

3  form.  The Complaint does not allege facts demonstrating that EGEA had the knowledge or intent

4  necessary to support a claim for punitive damages.

5      To the contrary, the Complaint attaches and incorporates by reference documents that

6  demonstrate precisely the opposite.  *See* Fed. R. Civ. Proc. 10(c); *U.S. v. Ritchie*, 342 F.3d 903, 908

7  (9th Cir. 2003) ("Certain written instruments attached to pleadings may be considered part of the

8  pleading.").  The Executive Board proposal to create the BIPOC At-Large Representative position,

9  which Plaintiff attached to his Complaint as Exhibit D, demonstrates that EGEA's intent was to

10  "provide a means of representation for [EGEA's] ethnic-minority members," to "address the racial

11  equity needs of all EGEA members," to make "an effort towards actionable steps to a more diverse,

12  equitable, and inclusive union," and to "have our elected decision making body reflect the

13  demographics of our membership," *not* to discriminate or cause harm to Plaintiff or any other

14  EGEA member.  Compl. Ex. D at 2.

15      Because Plaintiff has failed to allege facts sufficient to state a claim for punitive damages,

16  his claim for that relief must be dismissed under Rule 12(b)(6).

17                              **CONCLUSION**

18      For all the foregoing reasons, the Court should dismiss Plaintiff's claims for injunctive and

19  declaratory relief under Rule 12(b)(1) and dismiss his claim for punitive damages under Rule

20  12(b)(6).

21

22  Dated:  August 26, 2024                    Respectfully submitted,

23                                         ALTSHULER BERZON LLP
24                                         Stacey M. Leyton
                                           Matthew J. Murray
25                                         Emanuel Waddell

26
                                           By:  */s/ Emanuel Waddell*
27                                         *Attorneys for Defendant*

28